IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ESTATE OF ROBBIE LASHAY LEWIS STACKS and
MATTHEW STACKS, Individually and on Behalf of the
Other Wrongful Death Beneficiaries of Robert Lashay
Lewis Stacks                                                                    PLAINTIFFS

v.                                             CIVIL ACTION NO. 1:12-CV-00032-GHD-DAS

PRENTISS COUNTY, MISSISSIPPI;
CITY OF BOONEVILLE, MISSISSIPPI;
And MARCELLA ALVARADO, CODY FARRAR,
JOSH HUGHES, NENA ISBELL, JO CAROL KNIGHT,
ELIZABETH LINDSEY, DENNIS PEAKS, and
NICOLE TAYLOR, in their individual capacities                                   DEFENDANTS

<u>MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART
INDIVIDUAL DEFENDANTS' MOTION TO DISMISS</u>

Presently before the Court is Defendants' motion to dismiss [34]. Upon due consideration, the Court finds the motion should be granted in part and denied in part.

*A. Overview*

Plaintiffs bring this action against Prentiss County; Prentiss County Jail ("Prentiss County Jail" or the "Jail"); and several individuals who were employed as jailers at Prentiss County Jail at the time of the alleged events: Marcella Alvarado, Cody Farrar, Josh Hughes, Nena Isbell, Jo Carol Knight, Elizabeth Lindsey, Dennis Peaks, and Nicole Taylor (collectively, the "Individual Defendants"). Plaintiffs seek damages in connection with the suicide of the Decedent Robbie Lashay Lewis Stacks (the "Decedent") while incarcerated at the Jail. Plaintiffs allege that Defendants violated the Decedent's Eighth Amendment and Fourteenth Amendment rights to adequate medical and mental health care and the prevention of suicide.[1]

---

[1] Although Plaintiffs fail to explicitly mention 42 U.S.C. § 1983 in the complaint, they plead the elements of a Section 1983 cause of action, that is, that there was a deprivation of the Decedent's Eighth Amendment and

1

Because the motion to dismiss [34] presently before the Court is brought by the Individual Defendants concerning the claims asserted against them, the Court will cabin its examination of the facts and subsequent analysis to these claims. The Court notes that all the Individual Defendants request dismissal of the claims on qualified immunity grounds, but Defendants Cody Farrar, Dennis Peaks, Nicole Taylor, Josh Hughes, and Nena Isbell additionally seek dismissal for failure to state a claim upon which relief may be granted.[2] The Court also notes that this motion to dismiss [34] is before the Court at an early stage in the litigation when the parties have not yet had the benefit of engaging in discovery on the merits.

## B. Summary Judgment Standard

"The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). Of course, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The court must not evaluate the likelihood of the claim's success, but instead ascertain whether the plaintiff has stated a legally cognizable claim that is plausible. *Lone Star Fund*, 594 F.3d at 387 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). Because in considering the motion to dismiss the Court has

---

Fourteenth Amendment rights by persons acting under color of state law. *See Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Evans v. City of Marlin, Tex.*, 986 F.2d 104, 107 (5th Cir. 1993).

[2] Because the Court finds that qualified immunity should be granted to Defendants Cody Farrar, Dennis Peaks, Nicole Taylor, Josh Hughes, and Nena Isbell, the Court need not reach the failure-to-state-a-claim issue.

reviewed the parties' attached matters outside the pleadings which this Court shall not exclude—including an autopsy report attached to the motion and an affidavit and shift reports attached to the reply—the motion shall be considered a motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See* FED. R. CIV. P. 56(a); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

Where, as here, the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the plaintiff. *Scott v. Harris*, 550 U.S. 372,

3

378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, No. 11–41345, 2012 WL 5285103, at *1 (5th Cir. Oct. 26, 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)). With all the foregoing in mind, the Court turns to the alleged facts.

## C. Alleged Facts

On February 1, 2009, the Decedent was booked into the Jail on charges of contempt of court, careless driving, and driving without a license. On the following day, the Decedent was sentenced to a fine and a thirty-day suspended sentence on condition that she pay an additional fine for contempt of court. Because the Decedent was unable to pay her fines, she was placed on the Booneville Police Department Work Program, which allows an inmate to work outside the jail setting for the purpose of paying off fines to the City of Booneville.

Plaintiffs allege that jail personnel subjected the Decedent to sometimes arbitrary and wrongful discipline during her incarceration at the jail which prevented her from being able to participate in the work program. Specifically, Plaintiffs allege that the Decedent and "almost all of the other female arrestees and inmates" were regularly kept in lockdown for approximately twenty-three hours a day and allowed to spend the remaining hour outside their cells for the purpose of bathing. Pls.' Compl. [1] ¶ 22. Plaintiffs aver that lockdown was administered as a punishment "for imagined, trivial[,] or insignificant reasons" and that "[t]he extensive and mostly arbitrary use of lockdown by jail personnel exacerbated tensions in [the Jail] and increased the desperation of the female arrestees and inmates." *Id.* ¶ 23. Although Defendants dispute most of Plaintiffs' allegations, Defendant the City of Booneville concedes that the

4

Decedent was placed on lockdown, and that while on lockdown the Decedent was no longer able to report to the work program to pay off her fines. Plaintiffs claim that the Decedent "became increasingly depressed and despondent"; expressed to the jailers (including Defendant Marcella Alvarado) and other inmates and arrestees that she was suicidal; and showed them that she had cut her wrists on a metal table. *Id.* ¶ 24. Plaintiffs further allege that in response to the Decedent's vocalized suicidal ideations, Defendant Alvarado placed the Decedent in the isolation chamber[3] for several hours and then returned the Decedent to her cell. Plaintiffs aver that over the following day or so the Decedent continued to tell jailers, arrestees, and inmates that she wanted to kill herself and asked to be left alone in the isolation chamber continuously; although she was placed in the isolation chamber for several hours a day, she was always returned to her cell, despite her pleas to remain in the isolation chamber—where she would lack the means to kill herself. Plaintiffs aver that despite the Decedent's repeated vocalizing of suicidal ideation and showing physical evidence of a desire to kill herself, jail personnel made no note or report concerning this and did not put the Decedent on suicide watch or take measures to get the Decedent medically evaluated or treated.

Plaintiffs aver that when the Decedent refused to come out of her cell to get her lunch tray, Defendant Elizabeth Lindsey told the arrestees and inmates that she was not the Decedent's maid and that she would not "taze" the Decedent, but would "beat the hell out of her"; Defendant Lindsey then "slammed [the Decedent's] cell door shut." *Id.* ¶ 28. Plaintiffs aver that although the Decedent repeatedly voiced her despair to Defendant Lindsey that "she had lost everything, including her family and her home, and had nothing more to live for" and that she desired to kill herself, Defendant Lindsey "ignored [the Decedent] and stated, 'I have bigger fish to fry.' " *Id.* ¶ 29. Plaintiffs allege that after repeatedly requesting to be put in the isolation chamber, the

---

[3] The isolation chamber is also known as the "drunk tank."

5

Decedent was placed in the isolation chamber for a while, but that eventually Defendant Lindsey returned the Decedent to her cell, despite the Decedent's repeated pleas to be allowed to remain in the isolation chamber. *Id.* ¶ 31. Plaintiffs aver that the Decedent again requested to be placed in the isolation chamber after eating dinner in her cell, and Defendant Jo Carol Knight ignored her request and slammed the Decedent's cell door shut. *Id.* ¶ 32. Plaintiffs allege that at the start of the next shift Defendant Nena Isbell conducted a cell check and head count; the Decedent came to her cell window to greet Defendant Isbell (which the Decedent never did); and no one checked on the Decedent again.

Plaintiffs allege that "[a]pproximately thirty minutes to one hour later[ ] [the Decedent] called out to one of the other women to read a verse from the Bible," and "[i]mmediately thereafter, [the Decedent] could be heard coughing in her cell." *Id.* ¶ 35. After the Decedent failed to respond to the arrestees and inmates, jail personnel were called to assist the Decedent. Defendants Isbell and Josh Hughes responded to the call for help and found the Decedent hanging in her cell; the two jailers got the Decedent down and allowed two females to come out of their cells to perform CPR on the Decedent until emergency medical personnel could arrive. "[The Decedent]'s skin had turned blue, her lips were purple[,] and she had soiled herself when the females began performing CPR." *Id.* ¶ 38. Her breath and pulse returned after CPR was administered. Autopsy Report [35-2] at 4. Plaintiffs allege that approximately fifteen minutes after CPR was administered to the Decedent, the paramedics arrived. The Decedent was transported to a hospital, where she remained on life support for several days. The Decedent died after life support was withdrawn as a result of "[c]omplications of hanging with near asphyxia." Pl.'s Compl. [1] ¶ 39; Autopsy Report [35-2] at 1. The Decedent was twenty-five years old.

6

*D. Discussion and Analysis*

The Individual Defendants contend that they are entitled to qualified immunity on Plaintiffs' claims. In evaluating a claim of qualified immunity, the Court considers (1) whether the plaintiff has alleged a violation of a constitutional right and (2) whether that right was clearly established at the time of the alleged misconduct. *See Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009); *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000). Courts have discretion to determine which of these questions to address first. *Pearson*, 555 U.S. at 236, 129 S. Ct. 808.

a. Qualified Immunity: First Prong

First, the Court notes that the Individual Defendants concede that the first prong in the qualified immunity analysis is satisfied, that is, that Plaintiffs have alleged that the Decedent's Eighth and/or Fourteenth Amendment rights were violated when the Individual Defendants denied her adequate medical care and failed to take measures to prevent her suicide.[4] In conceding this first prong, the Individual Defendants have conceded much.

---

[4] The Fifth Circuit has stated:

> Pretrial detainees and convicted prisoners . . . look to different constitutional provisions for their respective rights to basic needs such as medical care and safety. The constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment, and, with a relatively limited reach, from substantive due process. The constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment. . . . The State cannot punish a pretrial detainee. . . . Since the State <u>does</u> punish convicted prisoners, but <u>cannot</u> punish pretrial detainees, a pretrial detainee's due process rights are said to be at least as great as the Eighth Amendment protections available to a convicted prisoner.

*Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (internal quotation marks and citations omitted; emphases in original). Although a distinction is drawn between the rights of pretrial detainees and convicted prisoners, "no constitutionally relevant difference exists between the rights of pre-trial detainees and convicted prisoners to be secure in their basic human needs." *Id.* at 647. "The deliberate-indifference standard applies when determining whether a jail official's episodic act or omission violated a [an inmate's constitutional]

To adequately allege a constitutional violation against an individual defendant, a plaintiff must establish that the official(s) acted with subjective deliberate indifference to the inmate's health or safety. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999); *see Hope v. Pelzer*, 536 U.S. 730, 737–38, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002) (internal citation omitted). "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (internal citation and quotation marks omitted). "Deliberate indifference is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal citation and quotation marks omitted). The Court "may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *See Hope*, 536 U.S. at 737–38, 122 S. Ct. 2508 (citing *Farmer v. Brennan*, 511 U.S. 825, 842, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). A jail official is deliberately indifferent to an inmate's medical needs and suicide prevention needs in violation of the inmate's constitutional rights if the official was subjectively aware of the risk and disregarded the risk by

---

> cannot punish a pretrial detainee. . . . Since the State <u>does</u> punish convicted prisoners, but <u>cannot</u> punish pretrial detainees, a pretrial detainee's due process rights are said to be at least as great as the Eighth Amendment protections available to a convicted prisoner.

*Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (internal quotation marks and citations omitted; emphases in original). Although a distinction is drawn between the rights of pretrial detainees and convicted prisoners, "no constitutionally relevant difference exists between the rights of pre-trial detainees and convicted prisoners to be secure in their basic human needs." *Id.* at 647. "The deliberate-indifference standard applies when determining whether a jail official's episodic act or omission violated a [an inmate's constitutional] right to medical care and to be secure from harm, including self-inflicted harm." *Kane ex rel. Kane v. County of Hardeman, Tex.*, 254 F.3d 1081, 2001 WL 564126, at *1 (5th Cir. May 17, 2001) (per curiam) (citing *Hare*, 74 F.3d at 647–48); *see Jacobs*, 228 F.3d at 393.

In the case *sub judice*, the Decedent was convicted on charges of contempt of court, careless driving, and driving without a license. Her sentence was suspended, and she was incarcerated at the Jail for the purpose of paying off her fines through the Jail's work program. Although the Decedent perhaps was not a typical convicted prisoner, she was convicted and required to pay fines that she could not have otherwise paid without participation in the Jail's work program. For all intents and purposes, she was a convicted prisoner. Thus, the Court will apply the Eighth Amendment's subjective deliberate-indifference standard in evaluating the claim.

failing to take reasonable measures to abate it. *See Farmer*, 511 U.S. at 847, 114 S. Ct. 1970. The jail official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S. Ct. 1970; *see also Gobert*, 463 F.3d at 346. "The nature of that risk—whether it is substantial or not—in any given case is ultimately a question of context and is susceptible to evaluations of contemporary standards of decency." *Morgan v. Hubert*, 459 F. App'x 321, 326 (5th Cir. Jan. 20, 2012) (citing *Horton v. Cockrell*, 70 F.3d 397, 401 (5th Cir. 1995) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (internal quotation marks omitted))). "[T]he plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (*quoting Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). "A [jail official] is deliberately indifferent if he intentionally denies or delays access to medical care." *Walker v. Butler*, 967 F.2d 176, 178 (5th Cir. 1992) (citing *Estelle*, 429 U.S. at 104, 97 S. Ct. 285). If the jail official tries to facilitate treatment, but the official's efforts are unsuccessful, the official is not necessarily deliberately indifferent. *See Gobert*, 463 F.3d at 346; *Treen*, 759 F.2d at1238. "[R]esponding to an inmate's complaints 'by referring the matter for further investigation' or taking other appropriate administrative action fulfills an official's protective duties under the Eighth Amendment." *Longoria v. Tex.*, 473 F.3d 586, 594 (5th Cir. 2006) (quoting *Johnson v. Johnson*, 385 F.3d 503, 526 (5th Cir. 2004)).

As stated above, the Individual Defendants concede that Plaintiffs have satisfied this difficult standard by sufficiently alleging that the Individual Defendants acted with subjective deliberate indifference to the Decedent's constitutional rights to adequate medical care and

9

suicide prevention—that is, that the officials were subjectively aware of the risk of the Decedent's suicide and disregarded the risk by failing to take reasonable measures to abate it. The Court now considers whether Plaintiffs have overcome the second prong in the qualified immunity analysis.

### b.   Qualified Immunity: Second Prong

Because it is undisputed that Plaintiffs have sufficiently alleged the Individual Defendants' subjective deliberate indifference to the Decedent's constitutional rights to medical care and suicide prevention, the Court turns to the second prong, which has two elements: (i) whether the alleged constitutional violation was clearly established at the time of the alleged misconduct, and (ii) whether the Individual Defendants' conduct was objectively unreasonable in light of the then clearly established law. *See Ateberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 256 (5th Cir. 2005) (internal citations omitted).

### (i)   Clearly Established Element

To satisfy the first element of the second prong of the qualified immunity analysis, Plaintiffs must show that the alleged constitutional violation was clearly established at the time of the alleged misconduct. For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope*, 536 U.S. at 739, 122 S. Ct. 2508 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) (internal quotation marks omitted)); *see Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (official qualifiedly immune unless "every reasonable official would understand that what he is doing violates [the law]"). Qualified immunity "ensure[s] that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier*, 533 U.S. at 206, 121 S. Ct. 2151. In other words, even if the officials

10

involved participated in constitutionally impermissible conduct, the officials "may nevertheless be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Hope*, 536 U.S. at 739 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) (internal quotation marks omitted)). "This does not require that the exact same action must previously have been held unconstitutional, but only that, in light of pre-existing law, the unlawfulness must have been apparent." *Johnson v. Epps*, 479 F. App'x 583, 591 (5th Cir. June 21, 2012) (citing *Anderson*, 483 U.S. at 640, 107 S. Ct. 3034).

Although the original aim of the Eighth Amendment was to prohibit cruel and unusual punishment, case law has extended its parameters to encompass "broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Victoria W. v. Larpenter*, 369 F.3d 475, 483 (5th Cir. 2004) (citing *Estelle*, 429 U.S. at 102, 97 S. Ct. 285) (internal citation omitted). Thus, officials have certain duties under the Eighth Amendment, including "provid[ing] humane conditions of confinement"; "ensur[ing] that inmates receive adequate food, clothing, shelter, and medical care"; and "tak[ing] reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832, 114 S. Ct. 1970 (internal citations and quotation marks omitted). For example, reasonable officials should understand that (1) deliberate indifference to an inmate's potential health risk of exposure to environmental tobacco smoke can form the basis of an Eighth Amendment claim, *see Helling v. McKinney*, 509 U.S. 25, 35, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993); (2) deliberate indifference to an inmate's threat to personal safety from exposed electrical wiring, deficient firefighting measures, and the mingling of inmates with serious contagious diseases with other prison inmates can form the basis of an Eighth Amendment claim, *see Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974), *cited with approval in Rhodes v. Chapman*,

452 U.S. 337, 352 n.17, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981); (3) deliberate indifference to an inmate's exposure to a serious communicable disease can form the basis of an Eighth Amendment claim—even if the inmate does not manifest symptoms of the disease, *see Helling*, 509 U.S. at 33, 113 S. Ct. 2475; (3) deliberate indifference to an inmate's health by being aware of the inmate's serious injury but not providing pain relief medication to the inmate when instructed to do so can form the basis of an Eighth Amendment claim, *see Chapman v. Johnson*, 339 F. App'x 446, 448 (5th Cir. 2009) (per curiam); and (4) deliberate indifference to an inmate's health by requiring him to remain on his bunk almost twenty-four hours a day for several days in a row in high temperatures can form the basis of an Eighth Amendment claim, *see Valigura v. Mendoza*, 265 F. App'x 232, 235 (5th Cir. 2008) (per curiam). Certainly, the failure to provide adequate protection against a prisoner's known suicidal impulses can form the basis of an Eighth Amendment claim. *See Evans v. City of Marlin*, 986 F.2d 104, 107 (5th Cir. 1993) (citation omitted). Plaintiffs allege that the Individual Defendants failed to provide adequate protection against the Decedent's known suicidal impulses in that they did not (1) make a notation report of the Decedent's suicidal ideation, (2) put the Decedent on suicide watch, (3) have the Decedent evaluated by trained personnel, or (4) seek any kind of medical intervention for her. The Court finds that Plaintiffs have satisfied the second element by showing that the alleged constitutional violation was clearly established at the time of the alleged misconduct.

(ii)     Objectively Reasonable Element

To satisfy the second element of the second prong of the qualified immunity analysis, Plaintiffs must show that the Individual Defendants' conduct was objectively unreasonable in light of the then clearly established law. The Court notes, again, that the Individual Defendants concede that Plaintiffs have sufficiently alleged that despite the Individual Defendants'

12

subjective awareness of the risk of the Decedent's suicide, the Individual Defendants failed to take reasonable measures to abate that risk. Also, Plaintiffs have shown that the alleged constitutional violation was clearly established at the time of the alleged misconduct. The Individual Defendants contend that they are entitled to qualified immunity because Plaintiffs have not shown that the Individual Defendants' conduct was objectively unreasonable.

Plaintiffs allege that the Individual Defendants failed to act objectively reasonable, because they did not (1) make a notation report of the Decedent's suicidal ideation, (2) put the Decedent on suicide watch, (3) have the Decedent evaluated by trained personnel, or (4) seek any kind of medical intervention for her. The Court recognizes much overlap in Plaintiffs' allegations with respect to each of the Individual Defendants. However, the Court also notes that "no interest is harmed by considering the officers' actions separately. Separate consideration does not require courts to conduct a separate analysis for each officer in those cases where their actions are materially indistinguishable, it merely requires them to consider each officer's actions." *See Meadours v. Ermel*, 483 F.3d 417, 422 n.3 (5th Cir. 2007) (emphasis in original). With this standard in mind, the Court examines the alleged actions of each Individual Defendant. The Court finds that the record, although sparse at this stage of the litigation, contains competent evidence that raises genuine disputes of material fact concerning the objective reasonableness of the acts of Defendants Marcella Alvarado, Jo Carol Knight, and Elizabeth Lindsey.

Marcella Alvarado

Many of Plaintiffs' allegations concern Defendant Alvarado, a jailer at the Prentiss County Jail. Plaintiffs allege that the Decedent told Defendant Alvarado that she was suicidal and showed Defendant Alvarado cuts on her wrists from trying to cut herself on a metal table. Pls.' Compl. [1] ¶ 24. Plaintiffs further aver that despite the Decedent's vocalization of her

13

suicidal ideations and showing physical evidence of a desire to kill herself, Defendant Alvarado acted objectively unreasonably by failing to make any notation or report of the Decedent's suicidal ideation, failing to place the Decedent on suicide watch, and failing to have the Decedent evaluated by trained personnel. *See id.* ¶ 25. Instead, Plaintiffs allege Defendant Alvarado placed the Decedent alone in the isolation chamber for several hours until the Decedent was returned to her cell. *Id.* ¶ 26. Plaintiffs further allege that despite the Decedent's ensuing requests to be placed in the isolation chamber and her further vocalized ideations of her intent to commit suicide, Defendant Alvarado failed to take action to help the Decedent. The Individual Defendants argue that Plaintiffs have not shown that all officers would have known in Defendant Alvarado's situation that their actions amounted to a constitutional violation. The Court finds that, taking Plaintiff's allegations as true, genuine disputes of fact exist concerning whether Defendant Alvarado's conduct was objectively reasonable. Therefore, because genuine disputes of material fact exist which must be resolved before the Court can determine whether Defendant Alvarado is immune from suit, the motion to dismiss is denied with respect to Defendant Alvarado on grounds of evidence sufficiency. *See Behrens v. Pelletier*, 516 U.S. 299, 313, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996); *Hunter v. Bishop*, 51 F. App'x 482, 2002 WL 31318797, at *1 (5th Cir. 2002) (per curiam).

Cody Farrar

Plaintiffs allege that Defendant Farrar, another jailer at the Prentiss County Jail, had direct personal contact with the Decedent and had personal knowledge of her suicidal ideations and requests for help, yet acted objectively unreasonably by failing to make any notation or report of the Decedent's suicidal ideation, failing to place the Decedent on suicide watch, and failing to have the Decedent evaluated by trained personnel. *See id.* ¶ 40. The Individual

14

Defendants argue, *inter alia*, that Plaintiffs failed to allege sufficient facts to assert that Defendant Farrar actions were objectively unreasonable. The Court finds this argument to be well taken. The Court thus finds that immunity should be granted as to Defendant Farrar.

### Josh Hughes

With respect to Defendant Hughes, another jailer at the Prentiss County Jail, Plaintiffs allege that the inmates and arrestees called for help when the Decedent failed to respond to them, and Defendant Hughes, along with Defendant Isbell, responded to the call for help and found the Decedent hanging in her cell; got the Decedent down; and let two females out of their cells to perform CPR until the emergency medical personnel could arrive. *Id.* ¶ 37. Plaintiffs aver that despite the Decedent's vocalizations of her suicidal ideations and showing physical evidence of a desire to kill herself, Defendant Hughes acted objectively unreasonably by failing to make any notation or report of the Decedent's suicidal ideation, failing to place the Decedent on suicide watch, and failing to have the Decedent evaluated by trained personnel. The Individual Defendants argue, *inter alia*, that Plaintiffs failed to allege sufficient facts to assert that Defendant Farrar actions were objectively unreasonable. The Court finds that Plaintiffs have failed to raise a genuine dispute of fact with respect to the objective reasonableness of Defendant Hughes's actions. Thus, qualified immunity should be granted as to Defendant Hughes.

### Nena Isbell

With respect to Defendant Isbell, another jailer at the Prentiss County Jail, Plaintiffs allege that at the start of her shift Defendant Isbell conducted a cell check and head count and the Decedent came to her cell window, which she never did, and greeted Defendant Isbell. *Id.* ¶ 34. Plaintiffs further allege that the Decedent was not checked on again until after she had hung herself. *Id.* Plaintiffs next allege that the inmates and arrestees called for help when the

Decedent failed to respond to them, and Defendant Isbell, along with Defendant Hughes, responded to the call for help and found the Decedent hanging in her cell; got the Decedent down; and let two females out of their cells to perform CPR until the emergency medical personnel could arrive. *Id.* ¶ 37. Plaintiffs aver that despite the Decedent's vocalizations of her suicidal ideations and showing physical evidence of a desire to kill herself, Defendant Isbell acted objectively unreasonably by failing to make any notation or report of the Decedent's suicidal ideation, failing to place the Decedent on suicide watch, and failing to have the Decedent evaluated by trained personnel. The Individual Defendants argue, *inter alia*, that Plaintiffs failed to allege sufficient facts to assert that Defendant Isbell's actions were objectively unreasonable. The Court finds that Plaintiffs have failed to raise a genuine dispute of fact with respect to the objective reasonableness of Defendant Isbell's actions. Thus, qualified immunity should be granted as to Defendant Isbell.

Jo Carol Knight

With respect to Defendant Knight, Plaintiffs allege that the Decedent repeatedly requested to be placed in the isolation chamber, but all her requests were ignored by Defendant Knight. *Id.* ¶ 32. Plaintiffs further allege that Knight at one point slammed the Decedent's cell door shut. *Id.* Plaintiffs aver that despite the Decedent's vocalizations of her suicidal ideations and showing physical evidence of a desire to kill herself, Defendant Knight acted objectively unreasonably by failing to make any notation or report of the Decedent's suicidal ideation, failing to place the Decedent on suicide watch, and failing to have the Decedent evaluated by trained personnel. The Individual Defendants argue that Plaintiffs have not shown that all officers would have known in Defendant Knight's situation that their actions amounted to a constitutional violation. The Court finds that, taking Plaintiff's allegations as true, genuine

16

disputes of fact exist concerning whether Defendant Knight's conduct was objectively reasonable. Therefore, because genuine disputes of material fact exist which must be resolved before the Court can determine whether Defendant Knight is immune from suit, the motion to dismiss is denied with respect to Defendant Knight on grounds of evidence sufficiency. *See Behrens v. Pelletier*, 516 U.S. 299, 313, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996); *Hunter v. Bishop*, 51 F. App'x 482, 2002 WL 31318797, at *1 (5th Cir. 2002) (per curiam).

Elizabeth Lindsey

Most of Plaintiffs' allegations concern Defendant Lindsey, another jailer at the Prentiss County Jail. Plaintiffs allege that when the Decedent refused to come out of her cell to get her lunch tray, Defendant Lindsey told the arrestees and inmates that she was not the Decedent's maid, and that although she would not taze the Decedent, she would beat the hell out of her; Plaintiffs then allege that Defendant Lindsey slammed the Decedent's cell door shut. *Id.* ¶ 28. Plaintiffs aver that the Decedent continued to beg to be placed in the isolation chamber, but was ignored. Plaintiffs claim that when the Decedent told Defendant Lindsey that she was trying to kill herself by cutting her wrists, showed Defendant Lindsey her wrists, and told her that "she had lost everything, including her family and her home, and had nothing more to live for," Defendant Lindsey ignored the Decedent and told her she had bigger fish to fry. *Id.* ¶ 29. After more begging to be placed in the isolation chamber, Plaintiffs claim that "another verbal confrontation" occurred with Defendant Lindsey, and the Decedent was placed in the isolation chamber. *Id.* ¶ 30. Plaintiffs then allege that the Decedent remained in the isolation chamber for several hours until Defendant Lindsey "moved [her] out." *Id.* ¶ 31. Plaintiffs allege that the Decedent asked Defendant Lindsey what she had done wrong and begged to be left alone in the isolation chamber, but despite her pleas, the Decedent was returned to her cell. *Id.* Plaintiffs

17

further aver that despite the Decedent's vocalization of her suicidal ideations and showing physical evidence of a desire to kill herself, Defendant Lindsey acted objectively unreasonably by failing to make any notation or report of the Decedent's suicidal ideation, failing to place the Decedent on suicide watch, and failing to have the Decedent evaluated by trained personnel.

The Individual Defendants attach Defendant Lindsey's affidavit and her shift notes to their reply; Defendant Lindsey's account of the facts somewhat differs from Plaintiffs' version. Defendant Lindsey states that she gave the Decedent fifteen days on lockdown because the Decedent was "flashing notes and her breasts to the male inmates" in Zone 3. Lindsey Aff. [45-1] ¶ 5. Defendant Lindsey maintains that she made the statement that she "had bigger fish to fry" in reference to these incidents, not in response to the Decedent's talk of suicide. *Id.* ¶ 5. Defendant Lindsey further states that she was informed that the Decedent was banging her head on the wall, and after she went to talk to her about it, the Decedent stated that it was unfair that she was put on lockdown when the other inmates who were doing the same thing did not get put on lockdown; Defendant Lindsey told her she did not catch them doing anything and could not prove they did anything. *Id.* ¶ 6; Lindsey Shift Report [45-1] at 6. Defendant Lindsey further states that the Decedent told Defendants Lindsey, Isbell, and Stewart that if she was going down, so was the whole zone. Lindsey Shift Report [45-1] at 5. Defendant Lindsey states that the Decedent showed her "the red welts" on the inside of her forearm from elbow to wrist that she had from "rub[bing] them on a table," but "the skin was not broken." Lindsey Aff. [45-1] ¶ 7. Defendant Lindsey maintains that "[i]t did not occur to me that [the Decedent] had any desire to kill herself because it would have been impossible to do so by rubbing her forearm on that table." *Id.* However, Defendant Lindsey states that the Decedent told her "I want to cut myself" and that she wanted to be alone; Defendant Lindsey told her the only way she could be alone was to

18

go to the isolation chamber; the Decedent agreed to go to the isolation chamber; and Defendant Lindsey escorted her to it. *Id.* ¶ 8–9; Lindsey Shift Report [45-1] at 6. Defendant Lindsey states that she talked to the Decedent about what was bothering her, and the Decedent said that the other female inmates were saying bad things to her, but did not specify what things they were saying, just that it did not matter because the inmates were not going to stop saying bad things to her. Lindsey Shift Report [45-1] at 7. Defendant Lindsey then states that she took the Decedent her supper in the isolation chamber; later, the Decedent smiled and told Defendant Lindsey that she had eaten all her food; Defendant Lindsey told her that was good; and the Decedent had calmed down. Lindsey Aff. [45-1] ¶ 10. At some point, another inmate had to be placed in the isolation chamber; thus, the Decedent was escorted back to her cell to make room for the other inmate in the isolation chamber. *Id.* Defendant Lindsey states: "A little while later, [the Decedent] called me to tell me that it hurt to breathe"; Defendant Lindsey told the Decedent to slow her breathing down and asked her if she was okay; the Decedent said that she was. *Id.* ¶ 11. Defendant Lindsey states that she wrote on the "Pass on Information" sheet to keep a watch on the Decedent because of her complaint about her difficulty breathing, and then Defendant Lindsey's shift ended. *Id.* ¶ 12. Defendant Lindsey maintains that the Decedent "never told me that she wanted to commit suicide or kill herself" and she "never heard from any other officers or inmates that [the Decedent] wanted to commit suicide or kill herself." *Id.* ¶ 13.

The Court finds that there are rich disputes of material fact concerning the objective reasonableness of Defendant Lindsey's actions. The Court notes with particular interest Defendant Lindsey's statement that she made a notation to keep a watch on the Decedent because of her stated difficulty breathing, given the Individual Defendants' concession that Plaintiffs have adequately alleged that the Individual Defendants were subjectively aware of the

risk that Decedent would commit suicide yet failed to take reasonable measures to abate that risk. Plaintiffs and the Individual Defendants dispute much of what transpired between the Decedent and Defendant Lindsey, and this fact-by-fact discrepancy precludes summary judgment on qualified immunity grounds for Defendant Lindsey. Although the Individual Defendants have attached an affidavit of Defendant Lindsey's account of the facts and Plaintiffs have not attached a comparable affidavit, the Court notes that the only comparable affidavit would contain the Decedent's version of the facts—which is obviously impossible to obtain. Although the Court does not have the benefit of Decedent's affidavit, the Court does have the benefit of Plaintiffs' verified complaint, which is competent summary judgment evidence. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). At this stage in the litigation, summary judgment is not proper as to Defendant Lindsey. The Court finds that, taking Plaintiff's allegations as true, genuine disputes of fact exist concerning whether Defendant Lindsey's conduct was objectively reasonable. Therefore, because genuine disputes of material fact exist which must be resolved before the Court can determine whether Defendant Lindsey is immune from suit, the motion to dismiss is denied with respect to Defendant Lindsey on grounds of evidence sufficiency. *See Behrens v. Pelletier*, 516 U.S. 299, 313, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996); *Hunter v. Bishop*, 51 F. App'x 482, 2002 WL 31318797, at *1 (5th Cir. 2002) (per curiam).

Dennis Peaks

Plaintiffs allege that Defendant Peaks, another jailer at the Prentiss County Jail, had direct personal contact with the Decedent and had personal knowledge of her suicidal ideations and requests for help, yet acted objectively unreasonably by failing to make any notation or report of the Decedent's suicidal ideation, failing to place the Decedent on suicide watch, and failing to have the Decedent evaluated by trained personnel. *See* Pls.' Compl. [1] ¶ 40. The

20

Individual Defendants argue, *inter alia*, that Plaintiffs failed to allege sufficient facts to assert that Defendant Peaks's actions were objectively unreasonable. The Court finds that Plaintiffs have failed to raise a genuine dispute of fact with respect to the objective reasonableness of Defendant Peaks's actions. Thus, Defendant Peaks is qualifiedly immune from suit on this action.

### Nicole Taylor

Plaintiffs allege that Defendant Taylor, another jailer at the Prentiss County Jail, had direct personal contact with the Decedent and had personal knowledge of her suicidal ideations and requests for help, yet acted objectively unreasonably by failing to make any notation or report of the Decedent's suicidal ideation, failing to place the Decedent on suicide watch, and failing to have the Decedent evaluated by trained personnel. *See id.* The Court finds that Plaintiffs have failed to raise a genuine dispute of fact with respect to the objective reasonableness of Defendant Taylor's actions. Thus, Defendant Taylor is qualifiedly immune from suit on this action.

### E. Conclusion

In sum, the Individual Defendants' motion to dismiss [34] should be GRANTED as to Defendants Cody Farrar, Nena Isbell, Josh Hughes, Dennis Peaks, and Nicole Taylor on grounds of qualified immunity.

The Individual Defendants' motion to dismiss [34] should be DENIED as to Marcella Alvarado, Jo Carol Knight, and Elizabeth Lindsey at this stage of the litigation, based on evidence sufficiency grounds.

The Court will entertain a renewed motion for qualified immunity with respect to these Defendants at the commencement of the trial in this cause.

21

An order in accordance with this opinion shall issue this day.  3/18/2013

_____
SENIOR JUDGE