IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

ESTATE OF ROBBIE LASHAY LEWIS STACKS and
MATTHEW STACKS, Individually and on Behalf of the
Other Wrongful Death Beneficiaries of Robert Lashay
Lewis Stacks                                                                                          PLAINTIFFS

v.                                                                    CIVIL ACTION NO. 1:12-CV-00032-GHD-DAS

PRENTISS COUNTY, MISSISSIPPI;
CITY OF BOONEVILLE, MISSISSIPPI; and
MARCELLA ALVARADO, JO CAROL KNIGHT,
and ELIZABETH LINDSEY, in their individual capacities                      DEFENDANTS

## MEMORANDUM OPINION GRANTING QUALIFIED IMMUNITY TO DEFENDANTS ELIZABETH LINDSEY, MARCELLA ALVARADO, AND JO CAROL KNIGHT

Presently before the Court is a motion for reconsideration [49] filed by Defendants Marcella Alvarado, Jo Carol Knight, and Elizabeth Lindsey challenging the Court's denial of qualified immunity to them. For the following reasons, the Court finds the motion for reconsideration [49] is well taken and that these three Defendants are entitled to qualified immunity.

*A. Procedural Background*

On February 13, 2012, Plaintiffs initiated this action against Prentiss County; the City of Booneville; and several individuals who were employed as jailers at Prentiss County Jail at the time of the alleged events: Marcella Alvarado, Cody Farrar, Josh Hughes, Nena Isbell, Jo Carol Knight, Elizabeth Lindsey, Dennis Peaks, and Nicole Taylor (collectively, the "Individual Defendants"). Plaintiffs seek damages in connection with the suicide of the Decedent Robbie Lashay Lewis Stacks (the "Decedent") while incarcerated at the Jail. Plaintiffs allege that Defendants violated the Decedent's Eighth Amendment and Fourteenth Amendment rights to

1

adequate medical and mental health care and the prevention of suicide.[1] Defendants answered the complaint and subsequently, prior to engaging in discovery on the merits, the Individual Defendants filed a motion to dismiss [34] on qualified immunity grounds. Although the motion was styled a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Individual Defendants attached matters outside the pleadings to their motion papers. Because the Court considered the attached matters in its ruling, the Court converted the Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment pursuant to Rule 12(d). *See* FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 745 (5th Cir. 1986).

On March 18, 2013, the Court entered a memorandum opinion [47] and Order [46] granting qualified immunity to Defendants Cody Farrar, Nena Isbell, Josh Hughes, Dennis Peaks, and Nicole Taylor, but denying qualified immunity to Defendants Marcella Alvarado, Jo Carol Knight, and Elizabeth Lindsey on evidence sufficiency grounds.

On April 5, 2013, Defendants Marcella Alvarado, Jo Carol Knight, and Elizabeth Lindsey ("These Defendants") filed the present motion for reconsideration [49], wherein they challenge the Court's denial of qualified immunity to them. Specifically, they challenge the Court's application of the standard of review in converting the motion to dismiss to a motion for summary judgment, as well as the Court's ruling on objective reasonableness. Plaintiffs have filed a response and attached declarations from four inmates who were incarcerated with the Decedent at the time of her suicide. These Defendants have now filed a reply, wherein they state

---

[1] Although Plaintiffs fail to explicitly mention 42 U.S.C. § 1983 in the complaint, they plead the elements of a Section 1983 cause of action, that is, that there was a deprivation of the Decedent's Eighth Amendment and Fourteenth Amendment rights by persons acting under color of state law. *See Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Evans v. City of Marlin, Tex.*, 986 F.2d 104, 107 (5th Cir. 1993).

that the Court should reconsider its denial of qualified immunity to them in light of Plaintiffs' newly submitted exhibits, which These Defendants contend demonstrate that they are qualifiedly immune from suit.

Recognizing the complexity of the issues before it, the Court has carefully re-reviewed the qualified immunity motion papers and has carefully reviewed the parties' arguments on the motion for reconsideration and Plaintiffs' newly attached submissions as part of the summary judgment record.

### B. Legal Standards

#### 1. Motion for Reconsideration Standard

"While the Federal Rules of Civil Procedure do not provide for a motion for reconsideration, such a motion may be considered either a Rule 59(e) motion to alter or amend judgment or a Rule 60(b) motion for relief from judgment or order." *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004) (citing *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th Cir. 1998)). However, by their terms, Rules 59 and 60 apply only to final judgments. *See* FED. R. CIV. P. 59 (concerning motions to alter or amend a judgment); FED. R. CIV. P. 60(b) (providing relief from "a final judgment, order, or proceeding"). *See also* FED. R. CIV. P. 60(b) advisory committee's notes of 1946 ("The addition of the qualifying word 'final' emphasizes the character of judgments, orders[,] or proceedings from which Rule 60(b) affords relief[.]"); *McMillan v. MBank Fort Worth, N.A.*, 4 F.3d 362, 366 (5th Cir. 1993) ("A Rule 60(b) motion cannot be filed until a final judgment has been entered.").

A district court's decision to deny qualified immunity based on evidentiary sufficiency is not a final decision. *Gibson v. Kilpatrick*, No. 12–60905, 2013 WL 5806947, at *2 (5th Cir. Oct. 29, 2013) (citing *Johnson v. Jones*, 515 U.S. 304, 313, 115 S. Ct. 2151, 132 L. Ed. 2d 238

(1995); *Gobert v. Caldwell*, 463 F.3d 339, 344 (5th Cir. 2006)). *See Behrens v. Pelletier*, 516 U.S. 299, 313, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996) ("[D]eterminations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case; if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred, the question decided is not truly 'separable' from the plaintiff's claim, and hence there is no 'final decision . . . .' "); *Hunter v. Bishop*, 51 F. App'x 482, 2002 WL 31318797, at *1 (5th Cir. 2002) (per curiam) ("Here, the district court denied Defendant's motion for summary judgment on grounds that genuine issues of material fact exist as to what occurred between Defendant and Plaintiff which must be resolved before the court could determine whether Defendant is immune from suit. Because this determination was merely one of 'evidentiary sufficiency,' we lack jurisdiction to hear Defendant's appeal."). Any such non-final ruling is controlled by Rule 54(b), which provides:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

FED. R. CIV. P. 54(b). "Rule 54(b) authorizes a district court to reconsider and reverse its prior rulings on any interlocutory order 'for any reason it deems sufficient.' " *United States v. Renda*, 709 F.3d 472, 479 (5th Cir. 2013) (quoting *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 210–11 (5th Cir. 2010)).

## 2. *Summary Judgment Standard*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See* FED. R. CIV. P. 56(a); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S. Ct. 2548 (internal quotation marks omitted). *Accord Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). In applying the summary judgment standard, the court must construe "all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2009) (citing *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005). However, "a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th

Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)). With the foregoing legal standards in mind, the Court turns to the issues before it.

## C. Analysis and Discussion

On a qualified immunity motion for summary judgment, the plaintiff must "demonstrate the inapplicability of the [qualified immunity] defense" by "present[ing] sufficient evidence to create a genuine dispute of material fact regarding both prongs of the two-prong qualified immunity test." *Beaulieu v. Lavigne*, No. 12–31061, 2013 WL 4478228, at *2 (5th Cir. Aug. 22, 2013) (per curiam) (citing *Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (in turn citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc))). First, he must present evidence that the facts alleged demonstrate that the government official's conduct violated the plaintiff's constitutional right. *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). Second, he must show that the right was clearly established. *Id.* (citing *Saucier*, 533 U.S. at 201, 121 S. Ct. 2151). Courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first. *Id.* (citing *Ashcroft v. Al–Kidd*, —— U.S. ——, ——, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011) (internal citation omitted)).

As the Court stated in its earlier memorandum opinion [47] and Order [46], the parties agree that Plaintiffs have satisfied the first prong of the qualified immunity analysis, that is, that Plaintiffs have alleged the violation of a clearly established Eighth Amendment right[2] by

---

[2] The Fifth Circuit has stated:

> Pretrial detainees and convicted prisoners . . . look to different constitutional provisions for their respective rights to basic needs such as medical care and safety. The constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment, and, with a relatively limited reach, from substantive due process. The constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment. . . . The State

6

claiming that Defendants acted with subjective deliberate indifference to the Decedent's health or safety by denying adequate medical care and failing to take measures to prevent the Decedent's suicide. *See* Defs.' Reply Supp. Mot. Recons. [59] at 6 n.1. Indeed, an alleged "failure to provide adequate protection against a prisoner's known suicidal impulses is actionable." *Anderson v. Dallas Cnty., Tex.*, 286 F. App'x 850, 857 (5th Cir. 2008) (per curiam) (citing *Evans v. City of Marlin, Tex.*, 986 F.2d 104, 107 (5th Cir. 1993) (citation omitted)).

Therefore, the dispositive issue before the Court was, and is, whether the right was clearly established, that is, whether sufficient evidence raises a question that the conduct of each or any of These Defendants was objectively unreasonable in light of the then clearly established law. *See Williams v. Kaufman Cnty., Tex.*, 352 F.3d 994, 1002 n.12 (5th Cir. 2003) ("[I]f a right is clearly established enough to impart fair warning to officers, then their conduct in violating that right cannot be objectively reasonable."). In the Court's earlier memorandum opinion [47] and Order [46] ruling on the Individual Defendants' qualified immunity motion, the Court found that there was insufficient factual evidence in the record to decide the question of law on

---

cannot punish a pretrial detainee. . . . Since the State <u>does</u> punish convicted prisoners, but <u>cannot</u> punish pretrial detainees, a pretrial detainee's due process rights are said to be at least as great as the Eighth Amendment protections available to a convicted prisoner.

*Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (internal quotation marks and citations omitted; emphases in original). Although a distinction is drawn between the rights of pretrial detainees and convicted prisoners, "no constitutionally relevant difference exists between the rights of pre-trial detainees and convicted prisoners to be secure in their basic human needs." *Id.* at 647. "The deliberate-indifference standard applies when determining whether a jail official's episodic act or omission violated a [an inmate's constitutional] right to medical care and to be secure from harm, including self-inflicted harm." *Kane ex rel. Kane v. Cnty. of Hardeman, Tex.*, 254 F.3d 1081, 2001 WL 564126, at *1 (5th Cir. May 17, 2001) (per curiam) (citing *Hare*, 74 F.3d at 647–48); *see Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000)).

In the case *sub judice*, the Decedent was convicted on charges of contempt of court, careless driving, and driving without a license. Her sentence was suspended, and she was incarcerated at the Jail for the purpose of paying off her fines through the Jail's work program. Although the Decedent perhaps was not a typical convicted prisoner, she was convicted and required to pay fines that she could not have otherwise paid without participation in the Jail's work program. For all intents and purposes, she was a convicted prisoner. Thus, the Court will apply the Eighth Amendment's subjective deliberate-indifference standard in evaluating the claim.

objective reasonableness, but that the question could be reconsidered at a later stage in the litigation. In light of Plaintiffs' new evidentiary submissions, the Court now reconsiders the issue of whether each of These Defendants' actions was objectively reasonable. *See Meadours v. Ermel*, 483 F.3d 417, 422 n.3 (5th Cir. 2007).

Defendant Elizabeth Lindsey

First, the Court turns to the meat of Plaintiffs' case: her allegations against Defendant Lindsey, a jailer at the Prentiss County Jail. The Court must determine if Plaintiffs have presented sufficient evidence showing that "[Defendant Lindsey] kn[ew] that [the Decedent] face[d] a substantial risk of serious harm" and "disregard[ed] that risk by failing to take reasonable measures to abate it," or, in other words, "acted or failed to act with deliberate indifference to that risk" to overcome Defendant Lindsey's qualified immunity defense. *See Farmer v. Brennan*, 511 U.S. 825, 834, 847, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *Martin v. Seal*, 510 F. App'x 309, 314 (5th Cir. 2013) (per curiam) (citing *Gobert*, 463 F.3d at 345–46). Deliberate indifference requires a showing that Defendant Lindsey (1) was "aware of facts from which an inference of excessive risk to [the Decedent's] health or safety could be drawn," and (2) "that [Defendant Lindsey] actually drew an inference that such potential for harm existed." *See Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (quoting *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998)). This "extremely high standard to meet" requires Plaintiffs to show that Defendant Lindsey "refused to treat [the Decedent], ignored [her] complaints, intentionally treated [her] incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Martin*, 510 F. App'x at 314 (quoting *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (citation and quotation marks omitted)).

8

The undisputed evidence before the Court indicates that Defendant Lindsey had seen red welts on the Decedent's arm and knew that the welts were due to the Decedent's attempts to hurt or cut herself on a metal table,[3] that the Decedent had expressed her desire to hurt or cut herself to Defendant Lindsey,[4] that the Decedent had expressed her need to be alone to Defendant Lindsey,[5] that Defendant Lindsey had informed the Decedent that the only place she could be alone was the isolation chamber and that Decedent had agreed to go to the isolation chamber and after that began requesting to go to the isolation chamber,[6] and that Defendant Lindsey placed the Decedent in the isolation chamber and that she remained in the isolation chamber for hours until Defendant Lindsey moved her back to her cell in order to place another inmate in the isolation chamber.[7]

The question is whether Defendant Lindsey was aware that the Decedent was on the verge of committing suicide (a clearly serious harm). According to Plaintiffs, the answer is yes. Declarations from various inmates who were incarcerated with the Decedent indicate that other inmates were aware of the Decedent's intent to commit suicide.[8] Interestingly, the declaration of

---

[3] *See* Lindsey Aff. [45-1] ¶ 7 ("[The Decedent] showed me her arms where she had rubbed them on a table. Her arm had red welts in a couple of places, but the skin was not broken."); Lindsey Shift Report 2/18/2009 [45-3] at 1 ("[The Decedent] showed me her arms. There were red welts on the inside forearm length[-]wise from elbow to wrist varying in size. No skin was broken."); Inmate Aldridge Decl. [55-1] at 2 ("She showed me her arms that night when she got out to shower. They had marks on them."); Inmate Hamm Decl. [55-2] at 4 ("[The Decedent] had tried to cut her wrists on a metal table in her room."); Inmate Mitchell Decl. [55-3] at 2 ("She showed me her arms where she had been trying to cut her arms on the table in her room.").

[4] *See* Lindsey Shift Report 2/18/2009 [45-3] at 1 ("[The Decedent] said, 'I want to cut myself.' "); Inmate Mitchell Decl. [55-3] at 2 ("[The Decedent] said she was going to hurt herself.").

[5] *See, e.g.*, Lindsey Aff. [45-1] ¶ 8 ("[The Decedent] told me that she just wanted some peace and quiet.").

[6] *See* Lindsey Aff. [45-1] ¶¶ 8–9; Inmate Aldridge Decl. [55-1] at 3; Inmate Hamm Decl. [55-2] at 6.

[7] *See* Pls.' Compl. [1] ¶ 31; Lindsey Aff. [45-1] ¶ 10; Inmate Aldridge Decl. [55-1] at 3.

[8] *See* Inmate Aldridge Decl. [55-1] at 2–3 ("[The Decedent] was telling me that night that she was tr[y]ing to kill herself, but everything was to[o] dull. . . . She didn't want me to tell, but I told other inmates. It worried me. . . . She told me she lost everything and no one cared."); Inmate Hamm Decl. [55-2] at 3 ("Tuesday[, February] 17th is the first time I heard [the Decedent] say anything about suicide."); Inmate Hamm Decl. [55-2] at 4 (during the

9

Sandra Aldridge, an inmate who was incarcerated with the Decedent, states that approximately two days before the Decedent's suicide, the Decedent "didn't want [Inmate Aldridge] to tell [of the Decedent's intention to commit suicide]" but that Inmate Aldridge "told other inmates." *See* Inmate Aldridge [55-1] at 2. This evidence tends to show that the Decedent wanted to keep her suicidal ideations private. However, the evidence presented by Plaintiffs supports that the Decedent told Defendant Lindsey that she was trying to kill herself by cutting her wrists and "had lost everything, including her family and her home, and had nothing more to live for." Pls.' Compl. [1] ¶ 29; Inmate Hamm Decl. [55-2] at 4, 6; Inmate Shinault Decl. [55-4] at 2.

According to the evidence presented by Defendant Lindsey, the answer is no. Defendant Lindsey maintains that the Decedent never expressed to her any intent to commit suicide. *See* Lindsey Aff. [45-1] ¶¶ 7, 13 ("It did not occur to me that [the Decedent] had any desire to kill herself because it would have been impossible to do so by rubbing her forearm on that table. . . . [The Decedent] never told me that she wanted to commit suicide or kill herself. I never heard from any other officers or inmates that [the Decedent] wanted to commit suicide or kill herself.").

Based on the conflicting evidence from both sides, including the several inmate declarations and Defendant Lindsey's affidavit and shift reports, a clear genuine dispute of material fact exists as to whether Defendant Lindsey was aware that the Decedent was on the verge of committing suicide. Defendant Lindsey's statements in her affidavit that she was not aware that the Decedent was on the verge of suicide are not enough to eliminate the genuine dispute of fact. *See Cavalieri v. Shepard*, 321 F.3d 616, 621 (7th Cir. 2003).

---

Decedent's bathing time, she "told Tina Pitts that she was going to kill herself."); Inmate Hamm Decl. [55-2] at 5, 6 ("I really didn't think [the Decedent] was going to do it. I told [the Decedent] that cutting her wrists was going to hurt. . . . [The Decedent] said something about tying her sheet to the vent. . . . [S]he said she was going to tie her sheet on the air/heat vent and hang herself."); Inmate Mitchell Decl. [55-3] at 2 ("She had started [sic] that she wanted to kill herself because life wasn't fair.").

However, even assuming that Defendant Lindsey knew about the Decedent's suicidal ideations, Plaintiffs cannot prevail against Defendant Lindsey unless they can also establish that Defendant Lindsey's actions were objectively reasonable in light of the clearly established law. Although deliberate indifference is an extremely high standard, Plaintiffs "need not show that [Defendant Lindsey] acted or failed to act believing that harm would actually befall [the Decedent]; it is enough that [Defendant Lindsey] acted or failed to act despite [her] knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842, 114 S. Ct. 1970. Defendant Lindsey was not required to take flawless action or reasonable action to prevent the Decedent's suicide—even assuming she was aware of the suicide risk. To satisfy the deliberate indifference standard, Plaintiffs must show that Defendant Lindsey refused to treat the Decedent, ignored the Decedent's complaints, intentionally treated the Decedent incorrectly, or engaged in any similar conduct that clearly evinces a wanton disregard for the Decedent's serious medical needs. *See Domino*, 239 F.3d at 756.

Plaintiffs claim that the Decedent voiced her desperation and suicidal ideations to Defendant Lindsey, telling Defendant Lindsey "that she had lost everything, including her family and her home, and had nothing more to live for" and that "[the Decedent] told the Defendant Lindsey that she was trying to kill herself by cutting her wrists and showed the Defendant Lindsey her arms," but that in return, Defendant Lindsey "ignored" the Decedent and told her she had bigger fish to fry. Pls.' Compl. [1] ¶ 29; Inmate Hamm Decl. [55-2] at 4, 6; Inmate Shinault Decl. [55-4] at 2. Plaintiffs allege that Defendant Lindsey and the Decedent had more than one "verbal confrontation." Pls.' Compl. [1] ¶¶ 28, 30. Plaintiffs allege that Defendant Lindsey was verbally combative with the Decedent, informing the Decedent at one point when she would not come and pick up her lunch tray that she was "not [her] maid and would not 'taze'

11

her but would beat the hell out of her" and that "Defendant Lindsey then slammed [the Decedent's] cell door shut." Pls.' Compl. [1] ¶ 28; Hamm Decl. [55-2] at 4, 6; Mitchell Decl. [55-3] at 2. Plaintiffs further allege that Defendant Lindsey would not allow the Decedent to remain indefinitely in the isolation chamber, despite her desire to do so, because another inmate had to be placed in the isolation chamber for disciplinary reasons. Pls.' Compl. [1] ¶ 31; Inmate Aldridge Decl. [55-1] at 3; Inmate Hamm Decl. [55-2] at 4; Inmate Mitchell Decl. [55-3] at 2; Inmate Shinault Decl. [55-4] at 2. Plaintiffs maintain that despite the Decedent's vocalization of her suicidal ideations and showing physical evidence of a desire to kill herself, Defendant Lindsey failed to make any notation or report of the Decedent's suicidal ideation, failed to notify the next shift of the situation, failed to place the Decedent on suicide watch, and failed to have the Decedent evaluated by trained personnel.

Defendant Lindsey concedes that she told the Decedent she had bigger fish to fry, but argues that she made the statement that she had bigger fish to fry with respect to a report that the Decedent had flashed her breasts and wrote notes to the male inmates, and that the statement was not in response to any statement made by the Decedent. *See* Lindsey Aff. [45-1] ¶ 5; Lindsey Shift Report 2/15/2009 [45-2] at 1. It is undisputed that the Decedent had gotten in trouble for writing letters or notes to the male inmates. Lindsey Shift Report 2/15/2009 [45-2] at 1; Inmate Aldridge Decl. [55-1] at 2; Inmate Hamm Decl. [55-2] at 3. It is also undisputed that the Decedent had trouble getting along with the other inmates. *See, e.g.*, Lindsey Shift Report 2/15/2009 [45-2] at 1; Inmate Hamm Decl. [55-2] at 3. Defendant Lindsey further argues that before her shift ended she wrote on the "Pass on Information" sheet to keep a watch on the Decedent because the Decedent had complained to her that she was having difficulty breathing. *See* Lindsey Aff. [45-1] ¶ 12.

These Defendants argue that Plaintiffs have not shown that all officers would have known in Defendant Lindsey's situation that their actions amounted to a constitutional violation, because Plaintiffs have offered no proof that all other officers would know that verbally confronting an inmate and placing an inmate in her cell where he or she ultimately killed herself were constitutional violations. These Defendants argue that Plaintiffs' allegations at most raise questions as to whether Defendant Lindsey failed to do more to prevent the Decedent's suicide or furnished the opportunity for the Decedent to commit suicide by placing her back in her cell—both of which do not rise to the level of deliberate indifference.

The Court finds that Plaintiffs' allegations and evidence at most show that Defendant Lindsey failed to act reasonably to alleviate the risk that the Decedent would commit suicide—a failure that does not rise to the level of deliberate indifference. *See Martin*, 510 F. App'x at 315 (citing *Domino*, 239 F.3d at 756). Although "[a] reasonably prudent [person] may well have deemed it necessary to [take certain precautions]," to be "deliberately indifferent, [Defendant Lindsey] would have had to have chosen not to [take those precautions] with the expectation that some harm would result to [Defendant Lindsey]." *See Sibley v. Lemaire*, 184 F.3d 481, 489 n.7 (5th Cir. 1999). To overcome Defendant Lindsey's qualified immunity defense in the case *sub judice*, Plaintiffs must demonstrate that Defendant Lindsey "had the requisite mens rea; that [s]he [was] actually aware of the risk [that the Decedent would commit suicide], yet consciously disregarded it." *See Martin*, 510 F. App'x at 315 (quoting *Lawson v. Dall. Cnty. Tex.*, 286 F.3d 257, 262 (5th Cir. 2002) (internal quotation marks omitted)). Plaintiffs have failed to do so. On the evidence before the Court, the most that can be said is that Defendant Lindsey was negligent in failing to keep a closer watch on the Decedent than she did, that her verbal reactions to the Decedent may have further agitated the Decedent, and that she made a mistake in assuming that

the Decedent would not commit suicide. None of these inferences support the extremely difficult standard of deliberate indifference. The factual evidence is troubling and makes one ponder whether the Decedent would have been able to effectuate her suicide if circumstances had been different. For instance, the evidence indicates that the Decedent was in a cell by herself because she could not get along with the other inmates and/or had gotten in trouble for her actions with respect to other inmates. *See* Inmate Aldridge [55-1] at 3; Inmate Hamm Decl. [55-2] at 3. If the Decedent had been in a cell with another inmate, she might not have been able to effectuate her suicide. However, given the situation, she was not able to be put in a cell with another inmate at that time. The circumstances of this case are disturbing but do not preclude qualified immunity to Defendant Lindsey.

It is troubling to this Court that a plaintiff is required to meet such an exacting burden in order to bring an Eighth Amendment claim against jail officials in an inmate-suicide case, especially considering the likelihood of inmate suicide in general. *See generally* LINDSAY M. HAYES, NATIONAL STUDY OF JAIL SUICIDE: 20 YEARS LATER (National Center on Institutions and Alternatives, April 2010). However, this Court is bound by the precedent of the United States Supreme Court and the Fifth Circuit Court of Appeals which do not support a finding of deliberate indifference on these facts. Therefore, Defendant Lindsey is entitled to qualified immunity.

<u>Defendant Marcella Alvarado</u>

Second, the Court turns to Plaintiffs' allegations against Defendant Alvarado, another jailer at the Prentiss County Jail, and the declarations of several inmates who were incarcerated with the Decedent at the time of the alleged incidents: Plaintiffs allege that the Decedent told Defendant Alvarado that she was having suicidal thoughts and showed Defendant Alvarado cuts

14

on her wrists from trying to cut herself on a metal table in her room. Pls.' Compl. [1] ¶ 24; Inmate Hamm Decl. [55-2] at 4. Plaintiffs further allege that the Decedent told Defendant Alvarado to take her to the isolation chamber because she could not take it anymore, Inmate Aldridge Decl. [55-1] at 3, and that Defendant Alvarado complied with the Decedent's request, placing her in the isolation chamber for several hours. Pls.' Compl. [1] ¶ 26; Pls.' Mem. Br. Supp. Resp. Opp'n to Defs.' Qualified Immunity Mot. [41] at 3; Inmate Hamm Decl. [55-2] at 4; Inmate Mitchell Decl. [55-3] at 2. After Defendant Alvarado placed the Decedent in the isolation chamber, Defendant Alvarado "watched [the Decedent] carefully" and then "passed the situation along to [Defendant Nicole Taylor]." Inmate Hamm Decl. [55-2] at 6. Plaintiffs allege that Defendant Alvarado failed to make any notation or report of the Decedent's suicidal ideation, failed to place the Decedent on suicide watch, and failed to have the Decedent evaluated by trained personnel. Pls.' Compl. [1] ¶ 25.

These Defendants argue that Plaintiffs have not shown that all officers would have known in Defendant Alvarado's situation that their actions amounted to a constitutional violation, and that Plaintiffs have at most alleged that Defendant Alvarado failed to do more to prevent the Decedent's suicide, allegations which do not rise to the level of deliberate indifference.

In viewing all the summary judgment evidence before it, the Court is of the opinion that Plaintiffs have failed to present evidence that raises a question that the conduct of Defendant Alvarado was objectively unreasonable in light of the then clearly established law. The evidence before the Court demonstrates that when faced with the Decedent's requests to be placed in the isolation chamber and at least vocalized unhappiness, Defendant Alvarado complied with the Decedent's request and placed her in the isolation chamber. The declaration of Inmate Hamm

tends to show that Defendant Alvarado even watched the Decedent carefully while she was in the isolation chamber and informed another jailer of the situation. *See Anderson*, 286 F. App'x at 862 (evidence that jail official checked on inmate is indicative that jail official did not ignore risk of harm to inmate). Plaintiffs' strongest argument is that Defendant Alvarado did not do enough to prevent the Decedent's suicide—specifically, she allegedly did not put the Decedent on suicide watch, make a notation in the record of suicidal ideations, or have trained personnel evaluate the Decedent. Plaintiffs' allegations and evidence at most demonstrate that Defendant Alvarado acted negligently. To show an Eighth Amendment violation, a plaintiff "must typically show that a defendant acted, not just negligently, but with deliberate indifference." *Minneci v. Pollard*, — U.S. —, —, 132 S. Ct. 617, 625, 181 L. Ed. 2d 606 (2012) (citing *Farmer*, 511 U.S. at 834, 114 S. Ct. 1970 (internal quotation marks omitted)). As stated in the Court's earlier analysis, deliberate indifference means "knowingly and unreasonably disregarding an objectively intolerable risk of harm." *Farmer*, 511 U.S. at 846, 114 S. Ct. 1970. Even viewing all the evidence in Plaintiffs' favor, Plaintiffs have failed to present evidence that Defendant Alvarado knowingly and unreasonably disregarded an objectively intolerable risk of harm. Therefore, on the evidence before the Court, Defendant Alvarado is entitled to qualified immunity.

Defendant Jo Carol Knight

Third, the Court turns to Plaintiffs' allegations against Defendant Knight, another jailer at the Prentiss County Jail, and the declarations of several inmates who were incarcerated with the Decedent at the time of the alleged incidents: Plaintiffs allege that the Decedent asked Defendant Knight to place her in the isolation chamber, but that Defendant Knight ignored her requests. Pls.' Compl. [1] ¶ 32; Inmate Aldridge Decl. [55-1] at 3; Inmate Hamm Decl. [55-2] at 4, 6. Plaintiffs further allege that Knight at one point slammed the Decedent's cell door shut. Pls.'

Compl. [1] ¶ 32; Inmate Aldridge Decl. [55-1] at 3; Inmate Hamm Decl. [55-2] at 4, 6. Finally, Plaintiffs allege with respect to Defendant Knight that she failed to make any notation or report of the Decedent's suicidal ideation, failed to place the Decedent on suicide watch, and failed to have the Decedent evaluated by trained personnel.

These Defendants argue that Plaintiffs have not shown that all officers would have known in Defendant Knight's situation that denying an inmate's request to be placed in the isolation chamber amounted to a constitutional violation.

In viewing all the summary judgment evidence before it, the Court is of the opinion that Plaintiffs have failed to present evidence that raises a question that the conduct of Defendant Knight was objectively unreasonable in light of the then clearly established law. The sparse evidence concerning Defendant Knight before the Court demonstrates that when faced with the Decedent's requests to be placed in the isolation chamber and at least vocalized unhappiness, Defendant Knight if anything, failed to act because she did not perceive a suicide risk. Plaintiffs' allegations of Defendant Knight's conduct at most demonstrate negligent inaction, which as stated in the Court's earlier analysis, does not rise to the level of deliberate indifference. *See Farmer*, 511 U.S. at 836, 114 S. Ct. 1970; *Hare v. City of Corinth*, 74 F.3d 633, 645 (5th Cir. 1996) (en banc) (citing *Davidson v. Cannon*, 474 U.S. 344, 348, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986)). Thus, even viewing the evidence in Plaintiffs' favor, Plaintiffs have failed to allege deliberate indifference on the part of Defendant Knight. Therefore, Defendant Knight is also entitled to qualified immunity.

*D. Conclusion*

In sum, These Defendants' motion for reconsideration [49] is GRANTED, and Defendants Elizabeth Lindsey, Marcella Alvarado, and Jo Carol Knight are DISMISSED as parties to the action based on qualified immunity.

An order in accordance with this opinion shall issue this day.

THIS, the 20th day of November, 2013.

_____
SENIOR JUDGE